See also 864 F.Supp. 622.

John A. BARNES, Plaintiff,

v.

CALGON CORPORATION, and Mobil Oil Corporation, Defendants.

CALGON CORPORATION,
Third Party Plaintiff,

v.

PACEMAKER EMPLOYEE LEASING, INC.; Third Party Defendant.

No. 1:93–CV–616.

United States District Court,
E.D. Texas,
Beaumont Division.

Dec. 15, 1994.

Warren G. Clark, Jr., Swearingen Clark & Sikes, Port Arthur, TX, for plaintiff.

Neal Alan Kennedy, Lawarence A. Waks, Sutherland Asbill & Brennan, Austin, TX, for Calgon.

George Michael Jamail, Bernsen Jamail Hartley & Goodson, Beaumont, TX, for Pacemaker.

### MEMORANDUM OPINION

COBB, District Judge.

Before this court are two motions for summary judgment filed by Calgon Corporation (Calgon). This court will first confront Calgon's Motion for Partial Summary Judgment as to all claims and causes of action alleged against Calgon Corporation (Calgon) by plaintiff John A. Barnes. Then, this court will address Calgon's Motion for Summary Judgment, as the third-party plaintiff, against the third-party defendant, Pacemaker Employee Leasing Inc. (Pacemaker).

This action arose from the injury of John Barnes who was allegedly overcome by sodium hydrogen sulfide fumes while attempting to wash the tank of his chemical transport vehicle. Barnes brought a negligence claim against the contractor, Calgon, and against the owner of the premises, Mobil. Calgon then filed a third-party complaint against Pacemaker alleging that Pacemaker was contractually obligated to indemnify Calgon.

For the reasons stated below, this court finds that no genuine issues of material fact exists to preclude both of Calgon's summary judgment motions. Accordingly, each of Calgon's Motions for Summary Judgment are GRANTED.

### I. FACTS

Plaintiff, John A. Barnes, was employed by Pacemaker Employee Service (Pacemaker). In 1980, Pacemaker, through its division, Southwestern Professional Truck Driver Service, agreed to supply truck drivers to Calgon. Barnes was assigned to work for Calgon under the terms of this contract and had done so for approximately twelve years. The terms of the contract between Calgon and Pacemaker specifically provided that plaintiff's daily work activities would be directed by Calgon. Section II, paragraph 1 of the contract states: "That Calgon will dispatch, direct the loading and unloading of vehicles; select routes, direct the drivers as to pickups, deliveries and other matters related to the day to day operation of the vehicles utilized by Calgon." The contract also provided that Calgon would maintain all reports and records to comply with various regulatory agency requirements.

Pacemaker's responsibilities included the proper payment of wages, all applicable taxes, workers' compensation insurance, and all fringe benefits. Pacemaker also agreed to remove or discipline drivers with or without cause at Calgon's request. Pacemaker at all times paid for the workers' compensation insurance as well as carried out the above mentioned administrative duties in compli-

ance with the contract. Additionally, Pacemaker agreed to indemnify Calgon for all claims by its employees against Calgon.

On or about May 20, 1993, Barnes delivered a load of ChlorKill 8816 from Calgon's facilities in LaPorte, Texas, to Mobil's operations in Beaumont, Texas. After unloading these chemicals, Barnes was instructed to clean the tank of his truck and report to another area of Mobil's Beaumont plant.

Plaintiff Barnes contends that he was overcome by toxic fumes while washing his truck's chemical carrying tank. Plaintiff suffered his alleged injury while cleaning the transport tank with water. The water, when mixed with the residual chemicals, caused sodium hydrogen sulfide fumes to emanate from the tank. Plaintiff brought this suit alleging that Calgon and Mobil were negligent in permitting him to clean the tank in this manner. Calgon then filed a third-party complaint against Pacemaker. Calgon's third-party complaint seeks a judgment for indemnity against Pacemaker for the claims asserted by Barnes against Calgon.

## II. ANALYSIS

This court has jurisdiction over this claim pursuant to 28 U.S.C. section 1332. The parties involved are citizens of different states and the matter in controversy is greater than $50,000, exclusive of interest and costs.

Before the court are two motions for summary judgment filed by Calgon. Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the Court establish that there are no genuine issues of material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–88, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d

538 (1986). Genuine issues of material fact are not disputed and summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for a non-moving party...." *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291, 293–94 (5th Cir.1987).

### 1. Summary Judgment as to Plaintiff John A. Barnes

Calgon first seeks summary judgment in this action on the grounds that it had sufficient control over plaintiff's employment activities to make him an employee of Calgon for purposes of the Texas Workers' Compensation Act ("Act"). The Act contains an exclusive remedy provision that limits the recovery of injured employees.[1] As such, employers insured under this Act are insulated from employee suits resulting from work related injury.

■ Under Texas law, if a contract expressly ceded the right of control over an employee, that party with the "right to control" the employee is considered the employer for purposes of the Act. *Producers Chem. Co. v. McKay*, 366 S.W.2d 220, 226 (Tex. 1963); *Pederson v. Apple Corrugated Packaging*, 874 S.W.2d 135, 137 (Tex.App.—Eastland 1994, writ denied); *Archem Company v. Austin Industrial, Inc.*, 804 S.W.2d 268, 269 (Tex.App.—Houston [1st Dist] 1991, no writ). Courts look to specific facts of a case only when no contract exists or when the contract terms are ambiguous as to which party has the right to control the employee. *McKay*, 366 S.W.2d at 226; *Archem Company*, 804 S.W.2d at 269.

■ In the instant case, the contract between Calgon and Pacemaker states: "That Calgon will dispatch, direct the loading and unloading of vehicles; select routes, direct the drivers as to pick-ups, deliveries and other matters related to the day to day operation of the vehicles utilized by Calgon." (emphasis added). Pacemaker retained no right to control the work activities that resulted in plaintiff's injury. Plaintiff's own

---

1. *See* Tex.Rev.Civ.Stat.Ann. art. 8308–4.01, *repealed by* Tex.Lab.Code Ann. § 408.001 (Vernon Pamph.1994). The new statute becomes effective September 1, 1993, however, the injury in question occurred on May 20, 1993.

deposition testimony shows that a Calgon representative issued the orders to deliver the Chlorkill 8816 to Mobil. Plaintiff also stated that a Calgon representative was present on Mobil's premises during the delivery. The contention that Pacemaker retained control over plaintiff during these activities is unsubstantiated. Plaintiff offers no summary judgment evidence to support the contention that Pacemaker had any right to control plaintiff's actions with respect to Calgon's work activity. The contract executed between Pacemaker and Calgon expressly provides that Calgon retains the right to control the employment activities of Pacemaker's drivers. Consequently, the contract itself conclusively establishes that plaintiff was an employee of Calgon for purposes of the Workers' Compensation Act.

 Calgon also correctly contends that even if plaintiff is considered a "borrowed servant," Texas law provides that the employer with the right of control over the servant is considered the employer for purposes of the Act. The borrowed servant doctrine is implicated when a general employer loans or supplies an employee to another entity, termed the special employer, who then has temporary responsibility for the activities of the employee. *Aguilar v. Wenglar Constr. Co., Inc.*, 871 S.W.2d 829, 831 (Tex.App.—Corpus Christi 1994, n.w.h.). "Where both employers are operating under a contract expressly assigning the right to control, a court can dispose of the borrowed servant issue without the necessity of considering the facts and circumstances of the project." *Marshall v. Toys–R–Us Nytex, Inc.*, 825 S.W.2d 193, 196 (Tex.App.—Houston [14th Dist] 1992, writ denied).

Plaintiff contends that additional evidence must be considered in making a determination of which party has the right to control regardless of the existence of a contract specifying otherwise. *Exxon v. Perez*, 842 S.W.2d 629, 630 (Tex.1992). However, *Perez* was a limited holding that addressed the sometimes difficult question of determining right to control in cases where employees are furnished with certain types of machinery to perform specific aspects of a contract. *Id.; see also McKay*, 366 S.W.2d at 225. Factors outside the four corners of a contract may be considered when the contract does not accurately reflect the true legal relationship of the parties. *Perez*, 842 S.W.2d at 630. *Perez*, however, does not change the general rule that unambiguous contracts control the determination of which party has the right to control. *See McKay*, 366 S.W.2d at 226. Further, no evidence exists that the legal relationship of the parties is not accurately reflected by the contract.

In the present case, the contract between Calgon and Pacemaker expressly assigns the right to control plaintiff's work activities. The law is clear. As stated above, the contract controls the consideration of whether Calgon had the right to control plaintiff's job related activities. Further, even if there was no contract between the parties, plaintiff fails to raise a genuine issue of material fact that would defeat Calgon's motion for summary judgment. Pacemaker performed administrative functions. Pacemaker paid the workers' compensation insurance, issued paychecks, and terminated employees *based on performance evaluations and recommendations from Calgon.* Nothing in the contract shows that Pacemaker was involved in any way with the day to day work activities of plaintiff.

Plaintiff maintains, however, that the contract is ambiguous regarding who had the right to control the details of plaintiff's work. This court finds no credence in these assertions. The contract between Pacemaker and Calgon contains no ambiguity and plaintiff fails to present summary judgment evidence to raises a fact question as to which party controlled plaintiff's work activity. Consequently, the record taken as a whole could not lead a rational trier of fact to find for plaintiff. No genuine issues of material fact exist to preclude this court from granting summary judgment.

### 2. Summary Judgment as to Third–Party Defendant Pacemaker

 In its third-party complaint, Calgon contends that Pacemaker expressly agreed to indemnify Calgon for liability claims notwithstanding the possible negligence involved. The 1980 agreement states:

Southwestern Professional Truck Driver Service will indemnify and save Calgon harmless from any claims, liabilities and demands of its employees or those claiming through or under said employees, including: Payroll or Unemployment Compensation claims, injury or death claims, and all similar claims regardless of whether such claims are alleged to have been caused in whole or in part of any act of negligence of Calgon, its directors, officers, employees, agents or servants.

(Contract at I. para. 8(A)). Under the relevant terms of paragraph 8(A), Pacemaker agreed to indemnify Calgon against any claims made by Pacemaker's employees "regardless of whether such claims are alleged to have been caused in whole or in part of any act of negligence of Calgon." There is no dispute that plaintiff's claims arose from performance of work under this contract. Therefore, any alleged injury that resulted is covered by this indemnity agreement.

■ Having disposed of plaintiff's claims against Calgon, the only issue that remains is whether Calgon may recover attorneys' fees and costs from Pacemaker that Calgon incurred in defending this lawsuit. Texas law does not require that costs for defending an indemnified claim be expressly included in the contract. *Fisher Constr. Co. v. Riggs,* 320 S.W.2d 200, 211 (Tex.Civ.App.—Houston), *rev'd on other grounds,* 160 Tex. 23, 325 S.W.2d 126 (1959); *see also Continental Steel Co. v. H.A. Lott, Inc.,* 772 S.W.2d 513, 517 (Tex.App.—Dallas 1989, writ denied). Courts generally include attorneys' fees and costs in indemnity contracts. Addressing this issue, the court in *Fisher* explained that "[u]nless the indemnity agreement in question covers reasonable attorney's fees and expenses of defending the cause of action, Fisher would not be fully protected, indemnified, and saved harmless." *Fisher,* 320 S.W.2d at 211. For the same reasons, Calgon may recover litigation costs from Pacemaker even though the contract does not specifically address indemnification for attorneys' fees. This court must follow the law as explained in *Fisher* and construe indemnity provisions to include attorneys' fees and costs. In this manner, litigants such as Calgon are completely protected against all claims as provided by the parties' prior agreement.

For the foregoing reasons, this court GRANTS Calgon's Motion for Summary Judgment as to plaintiff Barnes. This court also directs Pacemaker to indemnify Calgon for all reasonable attorneys' fees and costs associated with defending the claims brought by plaintiff. Pacemaker is also ordered to pay all reasonable attorneys' fees and costs incurred by Calgon in enforcing the indemnity provisions of the contract in question.