IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-40250

_____


JOHN A. BARNES,

                        Plaintiff-Appellant,

        v.

CALGON CORPORATION and
MOBIL OIL CORPORATION,

                        Defendants,

CALGON CORPORATION,

                        Defendant-Appellee.
_____

Appeal from the United States District Court
for the Eastern District of Texas
(1:93 CV 616)
_____
September 21, 1995

Before KING, SMITH, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]


        Plaintiff-Appellant John A. Barnes filed suit for negligence

_____

        [*]Local Rule 47.5 provides:  "The publication of opinions
that have no precedential value and merely decide particular
cases on the basis of well-settled principles of law imposes
needless expense on the public and burdens on the legal
profession."  Pursuant to that Rule, the court has determined
that this opinion should not be published.

1

against Calgon Corporation and Mobil Oil Corporation in state court in Jefferson County, Texas, alleging that he was injured when he was overcome by fumes while washing the tank of Calgon's chemical transport vehicle.  After timely removal to the federal district court for the Eastern District of Texas, the court granted defendant Calgon Corporation's motion for summary judgment on the grounds that Calgon was Barnes's employer and thus insulated from  liability under the exclusive remedy provision of the Texas Workers' Compensation Act.  Barnes timely appealed.  Because we agree that Calgon is entitled to summary judgment, we affirm.


## I.   FACTUAL AND PROCEDURAL HISTORY

Plaintiff-Appellant John A. Barnes was, at all times relevant to the current action, a truck driver who, for approximately twelve years, was employed by Southwestern Professional Truck Driver Service, a division of Pacemaker Driver Service, Inc. ("Pacemaker").  In 1980, Pacemaker, through Southwestern Professional Truck Driver Service, contracted with Calgon Corporation ("Calgon") to provide Calgon with truck drivers.  In this contract, Pacemaker agreed to retain most administrative employment functions, such as bonding the drivers, disciplining and removing employees, maintaining regulatory reports, records, and data, paying the drivers' wages, benefits and workers' compensation insurance, maintaining employment and payroll records, and providing cash advances for drivers.

2

Pacemaker also agreed to indemnify Calgon for all claims by its employees against Calgon. The contract assigned Calgon the responsibility to "dispatch, direct the loading and unloading of vehicles; select routes, direct the drivers as to pick-ups, deliveries, and other matters related to the day to day operation of the vehicles utilized by Calgon." Calgon also assumed the responsibility to maintain records, check drivers' logs and reports, and provide and insure the vehicles. Pursuant to this contract, Barnes drove for Calgon during the entire course of his twelve-year employment with Pacemaker.

On May 20, 1993, Barnes delivered a load of ChlorKill 8816 from Calgon's facilities in LaPorte, Texas, to Mobil's operations in Beaumont, Texas. After unloading the chemicals, Barnes was injured when he was overcome by fumes while washing the inside of the tank in preparation for a new load of chemicals. Barnes alleges that Calgon is liable in negligence for his injuries by failing to instruct him, supervise him, provide him with necessary safety equipment and information, and provide him with a safe working environment.[1] Barnes sought damages for medical expenses, pain and suffering, and loss of income.[2]

Calgon moved for summary judgment on two grounds. First,

---

[1] Barnes also named Mobil as a defendant, but subsequently dismissed his claim against Mobil after reaching settlement with that defendant.

[2] Calgon filed a third-party complaint against Pacemaker, seeking indemnity from Pacemaker for Barnes's claims against Calgon. The district court granted Calgon's motion for summary judgment against Pacemaker, and held that Pacemaker was obligated to indemnify Calgon for its legal fees.

Calgon argued that Barnes's claim against it was barred by the exclusive remedy provision of the Texas Workers' Compensation Act.  Second, Calgon argued that any injuries incurred by Barnes were entirely the result of his own negligence and not any negligence by Calgon.

In an opinion filed on December 15, 1994, the district court granted Calgon's motion for summary judgment.  First, concluding that "[c]ourts look to specific facts of a case only when no contract exists or when the contract terms are ambiguous as to which party has the right to control the employee", the district court held that "the contract itself conclusively establishes that plaintiff was an employee of Calgon for purposes of the Workers' Compensation Act."  Second, the district court held that, under Texas law, even if Barnes is considered a "borrowed servant," Calgon is considered his employer and therefore shielded from liability under the Workers' Compensation Act.  Having concluded that Calgon is immune from liability as a matter of law, the district court did not address Calgon's second argument, and entered judgment in favor of Calgon.


II.  STANDARD OF REVIEW

We review the granting of summary judgment de novo, applying the same criteria used by the district court in the first instance.  Norman v. Apache Corp., 19 F.3d 1017, 1021 (5th Cir. 1994); Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994). First, we consult the applicable law to ascertain the material

4

factual issues.  <u>King v. Chide</u>, 974 F.2d 653, 655-56 (5th Cir. 1992).  We then review the evidence bearing on those issues, viewing the facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party.  <u>Lemelle v. Universal Mfg. Corp.</u>, 18 F.3d 1268, 1272 (5th Cir. 1994); <u>FDIC v. Dawson</u>, 4 F.3d 1303, 1306 (5th Cir. 1993), <u>cert. denied</u>, 114 S. Ct. 2673 (1994).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

Under Rule 56(c), the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion and identifying the portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Norman v. Apache Corp.</u>, 19 F.3d at 1023.  If the moving party meets its burden, the burden shifts to the non-moving party to establish the existence of a genuine issue for trial. <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 585-87 (1986); <u>Norman</u>, 19 F.3d at 1023.  The burden on the non-moving party is to do more than simply show that there is some metaphysical doubt as to the material facts.  <u>Matsushita</u>, 475 U.S. at 586.

III.  DISCUSSION

The sole issue on appeal in this case is whether the district court correctly decided that Pacemaker is Barnes's employer for the purposes of recovery for a workplace injury, and thus immune from liability pursuant to the exclusive remedy provision of the Texas Workers' Compensation Act.[3]

All parties involved agree that, under Texas law, the employer of Barnes is the entity that had "day to day" control over the details of Barnes's work.  See, e.g., Smith v. Otis Eng'g Corp., 670 S.W.2d 750, 751 (Tex. App. -- Houston [1st Dist.] 1984, no writ].  Similarly, the determination of whether an employee is a "borrowed servant" under Texas law -- thus rendering the company that is "borrowing" the employee the employer for purposes of the Workers' Compensation Act -- depends on which employer had the right of control and direction over the details and manner of the employee's daily work at the time of the accident.  Id.  This is a question of fact.  Id.

In this case, the district court held that the summary judgment evidence established, as a matter of law, that Calgon had such control over the details of Barnes's work so as to render it Barnes's employer under Texas law.  In so holding, the district court relied exclusively on the terms of the contract that governed the relationship between Pacemaker and Calgon.

---

3.   See Tex. Rev. Civ. Stat. Ann. art. 8308-4.01, recodified as Tex. Lab. Code Ann. § 408.001 (Vernon Pamph. 1995).  The new statute became effective September 1, 1993; however, the injury in question occurred on May 20, 1993.

This contract specifies, in Part II, ¶ 1, that Calgon will "dispatch, direct the loading an downloading of vehicles; select routes, direct the drivers as to pick-ups, deliveries and other matters related to the day to day operation of the vehicles utilized by Calgon."  Because the court viewed the contract between Pacemaker and Calgon as "expressly assigning the right to control," the district court concluded that it would be improper to consider evidence outside of the contract itself.

However, Texas law is clear that "a contract between two employers providing that one shall have the right of control over certain employees is a factor to be considered, but it is not controlling" in determining  whether an entity is an employer for the purposes of the exclusive remedy provision of the Texas Workers Compensation Act.  Exxon Corp. v. Perez, 842 S.W.2d 629, 630 (Tex. 1992) (opinion on motion for rehearing).[4]  Although the district court cited Archem Co. v. Austin Indus., Inc., 804 S.W.2d 268, 269 (Tex. App.--Houston [1st Dist.] 1991, no writ) for its conclusion that an unambiguous contract forecloses further inquiry into the factual circumstances surrounding the employment relationship, Archem merely stands for the proposition that "if a contract between a general and special employer expressly provides that one party has the `right to control' the

---

[4]    The district court distinguished this decision of the Supreme Court of Texas as "a limited holding that addressed the difficult question of determining right to control in cases where employees are furnished with certain types of machinery to perform specific aspects of a contract."  We read no such limiting language into the decision.

7

employee, then that employer . . . is entitled to the Act's protection from liability for negligence," and does not state that courts are prohibited from investigating into the circumstances of the case apart from the words of the contract. Id. (internal citation omitted). In fact, courts are always obligated to "review the facts of each case to determine which entity had the `right to control' the employee's activities." Id. at 270.

Nonetheless, even though the court was obligated to look outside the confines of the contract to determine who was in control of Barnes's day to day activities, Barnes has submitted no evidence to establish a genuine issue of material fact that the contract between Pacemaker and Calgon did not reflect the true relationship between the parties. Rather, Barnes, for the most part, relies only on sworn affidavits stating that he reported daily to his supervisors at Pacemaker rather than Calgon, that he selected his own routes, and that his behavior was circumscribed only by the contract that governed his relationship with Pacemaker. In other words, Barnes argues that, by taking directions on his day to day activities from Calgon, his day to day activities were in fact being controlled by Pacemaker. Because, in this manner, he concedes that it was in fact Calgon that directed his daily activities, Barnes has failed to establish a genuine issue of material fact to preclude the court from granting summary judgment on behalf of Calgon. The district court's granting of summary judgment in favor of Calgon

8

was proper.

IV.  CONCLUSION

For the reasons stated above, after consideration of the contract and of all other evidence submitted by the parties, we conclude that the district court correctly determined that Calgon was Barnes's employer for the purposes of the exclusive remedy provision of the Texas Workers' Compensation Act, and we therefore

AFFIRM.