Guillermina MOSQUEDA, Appellant,

v.

G & H DIVERSIFIED MFG., INC., Edward Kash, Kash Family Partnership and Kash Holdings L.L.C., Appellees.

No. 14–04–00183–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 31, 2007.

Rehearing Overruled March 29, 2007.

574

David Wayne Hodges, Galvin B. Kennedy, Houston, for appellant.

John Withers Clay, Robert W. Ohnesorge, Houston, Russell C. Ducoff, Bellaire, for appellees.

Panel consists of Justices EDELMAN, FROST, and SEYMORE.

## MAJORITY OPINION

CHARLES SEYMORE, Justice.

In this personal injury case, Guillermina Mosqueda appeals a judgment notwithstanding the verdict ("JNOV") in favor of G & H Diversified MFG., Inc. ("G & H") and a summary judgment granted in favor of Edward Kash, Kash Family Partnership, and Kash Holdings L.L.C. (collectively, the "Kashes").

## I. FACTUAL AND PROCEDURAL BACKGROUND

Edward Kash is the president of G & H, a manufacturing firm. Kash formed Kash Holdings, L.L.C. ("Kash Holdings") and Kash Family Partnership, L.P. ("KFP"). G & H used various temporary employment agencies, including Pacesetter Personnel Service, Inc. ("Pacesetter") and Link Staffing ("Link"), to supply skilled and unskilled laborers. Guillermina Mosqueda, an unskilled laborer, was initially recruited or employed by Pacesetter. On January 31, 2001, she sustained bodily injury while operating or cleaning a machine on the premises of G & H. Felix Gonzales, a G & H employee, was supervising Mosqueda's work when she was injured.

Pacesetter generated daily time tickets reflecting the number and identity of temporary employees furnished to G & H. The time ticket for appellant's date of injury was not offered or admitted into evidence. However, the following language pertinent to our inquiry appears on the back of time tickets that were admitted into evidence:

"Conditions of Service":

Customer designated on the front hereof confirms its agreement with The Temporary Personnel Service ("Service") designated on the front hereof as to the following terms and conditions of services rendered by the Service *now or in the future.*

\* \* \*

3. The Service is the employer of personnel furnished to Customer and Customer agrees to discuss all matters concerning their employment with the Service. The Service ... is responsible for ... the maintenance of Worker's Compensation Insurance. *Customer is the worksite employer with authority to*

*direct the work to be done, ... and supervise the employees.*

\* \* \*

8. *Customer agrees that it will not permit or assign the Service employees to perform any work which would expose them to any unreasonably dangerous working conditions.*

(emphasis added). Mosqueda received statutory workers' compensation benefits from Pacesetter's insurance carrier. Thereafter, she sued G & H and the Kashes, asserting claims for premises liability, negligence, products liability, gross negligence, and breach of contract. She also alleged single business enterprise, joint business enterprise, and alter ego. The trial court granted the Kashes' motions for summary judgment, concluding there was no genuine issue of material fact to support any of Mosqueda's claims against those persons or entities. At trial, G & H contended it was entitled to immunity from liability under the exclusive remedy provisions of the Workers' Compensation Act because Mosqueda was its "borrowed employee." The trial court submitted and the jury answered the following question:

**Question No. 1**

On the occasion in question, was Guillermina Mosqueda acting as a borrowed employee of G & H Diversified Manufacturing, L.P.?

One who would otherwise be in the general employment of one employer is a "borrowed employee" of another employer if such other employer or its agents have the right to direct and control the details of the particular work in question.

Answer "Yes" or "No."

Answer: No

The trial court granted G & H's motion for JNOV, in which G & H asserted that it was entitled to judgment as a matter of law based on its affirmative defense of the workers' compensation bar.

**II. ISSUES PRESENTED**

In Mosqueda's first six issues, she challenges the JNOV on the following grounds: (1) G & H failed to establish, as a matter of law, formation of a written contract that gave G & H the right to control Mosqueda at the time of her injury; (2) Mosqueda presented some evidence that there was no contract which controlled her status as an employee; (3) there was some evidence that G & H did not have the right to control details of the particular work in question; (4) the common law right of control test does not apply because the "purported" written agreement denominates Pacesetter as the employer responsible for providing workers' compensation insurance; (5) there was some evidence that Link Staffing was controlling Mosqueda's work when she sustained injury; and, (6) G & H did not establish that Mosqueda was a covered "employee" and that it was an "employer" under the Texas Worker's Compensation Act.

**III. STANDARD OF REVIEW**

In reviewing the trial court's judgment notwithstanding the verdict, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *See City of Keller v. Wilson,* 168 S.W.3d 802, 821 (Tex.2005). We must credit favorable evidence if a reasonable factfinder could do so and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. However, we cannot disregard undisputed evidence that allows one logical inference. *See id.* at 814. Moreover, incompetent evidence is legally insufficient to support a judgment, even if admitted without objection. *See id.* at 812. Evidence that might

be "some evidence" when considered in isolation is nevertheless rendered "no evidence" when contrary evidence shows it to be incompetent. *Id.* For example, an employee's testimony that he was in the course and scope of his employment is legally insufficient to support a verdict against his employer if the evidence shows that legal conclusion to be incompetent. *Minyard Food Stores, Inc. v. Goodman,* 80 S.W.3d 573, 579 (Tex.2002).

 If this court finds no competent evidence to support the verdict, then we review the record to determine if G & H established the contrary position as a matter of law.[1] We will affirm the JNOV if there is no evidence to support an issue, or conversely, the evidence establishes an issue as a matter of law. *See Exxon Corp. v. Quinn,* 726 S.W.2d 17, 19 (Tex.1987). When a movant for JNOV challenges an adverse finding on an affirmative defense, it must conclusively establish all vital facts in support of that defense. *Dow Chemical Co. v. Francis,* 46 S.W.3d 237, 241 (Tex. 2001).

## IV. ANALYSIS

**A. Does the evidence conclusively prove G & H and Pacesetter agreed that the Conditions of Service would govern Mosqueda's work at the time she was injured?**

 Under her first issue, Mosqueda asserts the following:

(1) G & H did not conclusively prove G & H and Pacesetter agreed that the Conditions of Service would govern

Mosqueda's work at the time she was injured.

(2) The contract that purportedly imposed the Conditions of Service on Mosqueda's work had expired before Mosqueda was injured.

(3) G & H's breach of the alleged contract prevents its enforcement.

As to the formation of the contract in question, Kash testified that Gonzales, a G & H supervisor, signed the time ticket for the week before Mosqueda was injured. This time ticket was offered and admitted into evidence without objection. Right above Gonzales's signature on behalf of the customer G & H, the time ticket states:

THIS TIME TICKET AND THE SERVICES PROVIDED HEREUNDER ARE SUBJECT TO THE TERMS AND CONDITIONS ON THE REVERSE SIDE.

The reverse side states the following:

**Customer designated on the front hereof confirms its agreement with the Temporary Personnel Service ("Service") designated on the front hereof as to the following terms and conditions of services rendered by the Service now or in the future.**

[Conditions of Service]

The undisputed evidence at trial shows that Gonzales signed this time ticket, which, by its unambiguous terms, sets forth the agreement between G & H and Pacesetter as to the right to direct and control the details of the Mosqueda's work at the time she was injured.[2]

Mosqueda argues that the time ticket that was admitted into evidence is not an

---

1. This two-step "as a matter of law" analysis has been criticized by some courts. *See Landon v. S & H Marketing Group, Inc.,* 82 S.W.3d 666, 674 n. 4 (Tex.App.-Eastland 2002, no pet.); *Montes v. Tex. Emp. Ins. Ass'n,* 779 S.W.2d 485, 487 (Tex.App.-El Paso 1989, no writ). This court will follow the two-step analysis until the Supreme Court of Texas disavows it.

2. Another time ticket with the same "Conditions of Service" language was offered into evidence by Mosqueda's counsel.

enforceable contract because Jay Graves, the G & H operations manager, testified that the Conditions of Service were binding on G & H only by signing the document and because Graves did not sign the time ticket in question. However, in this regard Graves simply testified that he understood the Conditions of Service were G & H's agreement with Pacesetter only if G & H signed the time ticket. Since our analysis is based on a time ticket signed by Gonzales on behalf of G & H, Graves's testimony does not present more than a scintilla of evidence that G & H did not agree to the Conditions of Service.

Mosqueda also asserts that Pacesetter's sales representative, Brenda Able, testified she did not negotiate a written contract with G & H. Able opined a legal conclusion that there never was a contract, only "an agreement for fee rate" which Pacesetter provides to all customers. Brenda Able's testimony is conclusory and must be weighed against undisputed facts. Mosqueda's signature appears on one of the time tickets. Mosqueda did not dispute the fact that Pacesetter and G & H conducted business by issuing and signing time tickets. Accordingly, there is one logical inference from this evidence; when contrasted with the undisputable fact that the parties executed time tickets with "Conditions of Service" language on the back, the conclusory testimony of Brenda Able must be disregarded and amounts to no evidence. *Minyard Food Stores, Inc.,* 80 S.W.3d at 579.

Mosqueda further argued that the time ticket signed by Gonzales was not effective on the date she was injured. This argument lacks merit. We find there is no ambiguity in the *"now and in the future"*

language under the Conditions of Service. Accordingly, this court concludes that Pacesetter and G & H intended the agreement to govern their relationship during all material times.

■ Next, Mosqueda contends the "purported" contract is not enforceable because G & H breached the "Conditions of Service" by assigning Mosqueda to unreasonably hazardous working conditions.[3] Mosqueda did not submit a jury question on this point. Consequently, Mosqueda has waived error, if any, because the evidence does not establish as a matter of law that G & H breached the contract in this manner. *See,* Tex.R. Civ. P. 274 and Tex. R.App. P. 33.1(a)(1)(A)(B). Even if Mosqueda's argument were considered on the merits, it is unavailing. Mosqueda relies on the general proposition that a party to a contract is discharged or excused from further performance if the other party commits a material breach of that contract. *See Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.,* 134 S.W.3d 195, 196 (Tex.2004). Applying this doctrine, if the jury found that G & H breached the contract, Pacesetter would be excused from a subsequent breach. None of the cases cited by Mosqueda are factually similar and the relevant legal doctrine she raises merely pertains to traditional rights and remedies between two parties when one party breaches the contract. Mosqueda was not a party to the agreement. This contract principle is not relevant to our disposition.

■ Under the unambiguous "Conditions of Service" language in the contract, G & H had the right to direct and control the details of Mosqueda's work. There is no language in the agreement either plain-

---

**3.** It should be noted that, in this argument, Mosqueda asserts only that G & H's alleged breach of paragraph 8 of the contract prevents G & H from enforcing the contract.

Mosqueda does not assert that section 8 creates an ambiguity or fact issue that the jury could have properly resolved.

ly modifying or limiting G & H's exercise of that right. Moreover, if G & H assigned Mosqueda to perform work which would expose her to unreasonably dangerous working conditions, it may have breached its promise to Pacesetter, but it was merely exercising its contractual right of control.[4] *See Wingfoot Enters. v. Alvarado,* 111 S.W.3d 134, 139 (Tex.2003) (holding that temporary employee who operated an industrial machine in violation of temporary employment agency's policy could still be borrowed employee of client company and employee acting in the course and scope of employment with the temporary employment agency, even though policy regarding operation of machinery had been violated).

Having rejected all of Mosqueda's arguments under her first issue, we overrule that issue.

## B. Is there a more than a scintilla of evidence supporting Mosqueda's assertion that no contract governed her status as an employee of G & H?

Under Mosqueda's second issue, the only argument that she asserts that is not asserted under other issues is that, as a matter of law, time tickets cannot be a contract. The only case Mosqueda cites in this regard does not support her argument. *See Cannan v. Absolute Demolition, Inc.,* No. 09–03–353–CV, 2004 WL 1366043, at *1 (Tex.App.-Beaumont 2004, no pet.) (stating that court had serious doubts that work ticket was a contract and that it assigned the right to control to one of the parties but stating that court need not address these issues to affirm the trial court's judgment and affirming on a different basis). This argument lacks merit. *See, e.g., Manges v. Mustang Oil Tool Co., Inc.,* 628 S.W.2d 503, 505 (Tex.App.-Corpus Christi 1982, no writ) (enforcing terms of delivery ticket as part of written contract). Accordingly, we overrule Mosqueda's second issue.

## C. Is there more than a scintilla of evidence supporting Mosqueda's assertion that G & H did not have the right to direct and control the details of Mosqueda's particular work at the time she was injured?

■ In support of her third and fourth issues, Mosqueda cites *Exxon Corp. v.*

4. The dissent, seizing upon Mosqueda's unavailing breach-of-contract argument, suggests that, "even if the Conditions of Service did apply, providing that G & H had general authority to direct the work to be done, paragraph 8 also applied, supporting at least a reasonable inference, which we must indulge, that G & H had no right to assign Mosqueda to perform any work that could expose her to any unreasonably dangerous working conditions." Because there was no objection to this portion of the charge, the dissent erroneously concludes: "the evidence presented at trial authorized the jury to render a verdict that Mosqueda was not a borrowed employee." The dissent fails to acknowledge the trial court did not determine that the subject contract language is ambiguous. The trial court could have submitted a jury question regarding intent of parties under that circumstance. Our colleague's proposed disposition would not authorize the jury to determine intent of the parties to the agreement which would be their proper role; the dissent implicitly opines that the jury is allowed to *interpret* and apply contract language, a duty assigned solely to the court. *Texaco, Inc. v. Pennzoil Co.,* 729 S.W.2d 768, 814 (Tex.App.-Houston [1st Dist.] 1987, writ ref'd n.r.e.). *See also Faust v. Pumpco, Inc.,* 57 S.W.3d 620, 624, 625 (Tex.App.-Texarkana 2001 pet. denied). Moreover, the suggestion that paragraph 8 supports a reasonable inference upon which the jury may determine an issue of fact is misguided. *See Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.,* 121 S.W.3d 742, 746 (Tex.2003) (stating that, if a contract is unambiguous, the court should interpret it as a matter of law and enforce it as written because there is no fact issue regarding the intent of the parties for the jury to consider).

*Perez. See* 842 S.W.2d 629, 630 (Tex. 1992). She contends her burden is to show there is more than a scintilla of evidence that G & H did not have the right to direct and control the details of her particular work at the time she was injured. There is a conflict among courts relative to disposition of contractual right-of-control issues. *Compare Alice Leasing Corp. v. Castillo,* 53 S.W.3d 433, 440–41 (Tex.App.-San Antonio 2001, pet. denied) (construing *Perez* to hold that a contractual right to direct and control the details of a person's work when he was injured is not determinative of the "borrowed employee" inquiry if there is evidence raising a fact issue as to whether that part of the contract is a sham or whether the parties continually disregarded the provisions of the contract regarding the right to control and declining to construe *Perez* as holding that a contract regarding the right to direct and control is always just one factor to be considered in conjunction with all of the other circumstances); *and Barnes v. Calgon Corp.,* 872 F.Supp. 349, 352 (E.D.Tex.1994) (same as *Castillo* ) *with Hoffman v. Trinity Indus., Inc.* 979 S.W.2d 88, 91 (Tex.App.-Beaumont 1998, pet. dism'd) (stating that, under *Perez,* contractual right to direct and control is not determinative and is just a factor to be considered along with all of the other circumstances). Although the parties have briefed this legal issue, we need not decide the case on this basis because, under the applicable standard of review, we conclude that the evidence conclusively proved that G & H had the right to direct and control the details of Mosqueda's particular work at the time she was injured, even if the Conditions of Service are only a factor to

be considered along with all of the other circumstances.[5]

In this regard, Mosqueda does not cite any evidence allegedly showing that G & H lacked this right to direct and control; rather, she cites her own testimony that she worked for Pacesetter and that Pacesetter sent her to work at G & H's facility. However, this evidence does not raise a fact issue as to Mosqueda's status as G & H's alleged borrowed servant. The Conditions of Service state that Pacesetter is Mosqueda's employer and that Pacesetter will maintain workers' compensation insurance covering Mosqueda. The Conditions of Service also state that G & H is the "worksite employer" and has the right to direct and supervise Mosqueda's work. An employee may have more than one employer within the meaning of the Texas Workers' Compensation Act, and each employer may raise the exclusive remedy provision as a bar to the employee's claims. *Western Steel Co. v. Altenburg,* 206 S.W.3d 121, 123 (Tex.2006); *accord Wingfoot Enters. v. Alvarado,* 111 S.W.3d 134, 134–35 (Tex.2003); *Brown v. Aztec Rig Eqip., Inc.,* 921 S.W.2d 835, 843–44 (Tex. App.-Houston [14th Dist.] 1996, writ denied).

Mosqueda also contends the contract did not give G & H the right to control the particular work that Mosqeda was doing when she was injured because G & H did not have the right to instruct Mosqueda to operate industrial machinery. However, this argument is a reiteration of one of Mosqueda's arguments under her first issue. This argument fails for the reasons stated above. *See ante* at pp. 577–78.

Mosqueda further argues that an employer/employee relationship was not established with G & H because she "was

---

**5.** Mosqueda asserts that *St. Joseph Hosp. v. Wolff* resolves this issue; however, she cites a statement in a footnote that is unnecessary to the plurality's recommended holding in that case. *See* 94 S.W.3d 513, 544 n. 92 (Tex. 2003) (Moseley, J., plurality op.). This footnote does not resolve the issue.

not knowledgeable about nor charged with knowledge of the lending agreement." In support of this argument, Mosqueda cites *Guerrero v. Standard Alloys Mfg. Company*, 566 S.W.2d 100 (Tex.Civ.App.-Beaumont 1978, writ ref'd n.r.e.), which appears to recognize a rule that the employee must consent to or be charged with knowledge of the lending agreement. In that case, the evidence showed that the general employer was on the job site several times a week, including the day of the accident, and had met with the workers to tell them how "to work faster and better." *Id.* at 102. The injured worker spoke no English, and the supervisors provided no direction because they could not speak Spanish. The general employer allegedly informed the workers they "were working for him." *Id.* The court in *Guerrero* stated that "in order to establish an employer-employee relationship between an employee and a borrowing employer, the employee must know or be charged with knowledge of the lending agreement." *Id.* at 102. Even if this were a correct statement of law, our disposition of this case would not be affected. The record demonstrates Mosqueda's awareness that she was loaned by Pacesetter. Apparently, all employees furnished by Pacesetter, regularly signed time tickets acknowledging their status as temporary employees of G & H. Mosqueda's signature or initials appears on one of the time tickets that was admitted into evidence.

There is no evidence that conflicts with G & H's right to direct and control as expressed in the Conditions of Service. We conclude that there is no competent evidence contradicting G & H's contractual right to direct and control the details of Mosqueda's particular work at the time she was injured. Accordingly, we overrule Mosqueda's third and fourth issues.

**D. Is there competent evidence supporting Mosqueda's contention that Link had the right to direct and control the details of her work at the time she was injured?**

Under her fifth issue, Mosqueda asserts that there was more than a scintilla of evidence that another temporary service agency, Link, had the right to direct and control the details of Mosqueda's work at the time she was injured. She bases this argument on her testimony regarding Nadia Campos and one statement made by Felix Gonzales during his testimony. Mosqueda testified Campos did the following:

● Along with Gonzales, Campos showed Mosqueda how to do her first task at G & H, which was assembling parts.

● If Mosqueda had questions or concerns about her job, she would talk to Campos or Gonzales.

● Campos told Mosqueda when it was time to take her lunch break.

● The day before the accident Gonzales and Campos told Mosqueda for the first time to work on the multislide machine to help the wire being fed into the multislide machine. They also told Mosqueda (1) to get up occasionally to check that the machine was working correctly and cutting the cable and (2) to clean the machine.

● On the day of the accident, the reason Mosqueda's hand was near moving parts on the multislide machine was that she had been trying to clean off parts of the machine as Gonzales and Campos had explained to her the day before.

● After the machine injured Mosqueda's thumb, she was taken to the hospital for surgery under general anesthesia. When she woke from the surgery, Campos was there.

- Gonzales and Campos were both giving Mosqueda directions. Although Campos was not Mosqueda's supervisor, Gonzales told Mosqueda that if she needed something and could not find him, to go to Campos.
- Campos worked with Gonzales, and Mosqueda believes Campos was "like, his right hand."

Mosqueda asserts that this evidence raises a fact issue as to whether Campos, acting as a Link employee, was exercising control over the details of Mosqueda's work when Mosqueda was injured. Presuming for the sake of argument that Mosqueda's testimony raised a fact issue as to whether Campos, in part, had the right to direct and control the details of Mosqueda's work when Mosqueda was injured, Mosqueda testified that Campos was like Felix Gonzales's "right hand." Therefore, Mosqueda's own testimony showed that Campos was acting as a G & H employee when she allegedly exercised control over the details of Mosqueda's work. Mosqueda asserts Gonzales testified that Campos was a Link representative rather than a G & H employee. However, in the testimony upon which Mosqueda relies, Gonzales does not state that Campos was a Link employee as opposed to a G & H employee; rather, he states that, when Mosqueda was injured, Campos "was temporary, also" and that she was "work[ing] for a temporary agency named ... L–I–N–K." This testimony indicates that Campos was another temporary worker assigned to work under G & H's direction, and it is consistent with Mosqueda's testimony that Campos worked with Gonzales as his "right hand." Therefore, even if there were evidence raising a fact issue as to whether Campos had the right to control the details of Mosqueda's work, there is no evidence raising a fact issue as to whether Campos had this right to control as a

representative of Link. Accordingly, we overrule Mosqueda's fifth issue.

**E. Did G & H fail to establish Mosqueda was a covered employee and it was an employer under the Workers' Compensation Act?**

 Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance against an employer for a work-related injury sustained by the employee. Tex. Lab.Code Ann. § 408.001(a) (Vernon 1996). Here, the parties stipulated that G & H was a subscriber to a policy of worker's compensation insurance. However, under her sixth issue, Mosqueda contends the stipulation does not fulfill G & H's purported obligation to prove her claim for worker's compensation benefits was covered by a policy of worker's compensation insurance. She cites *Univ. of Houston–Clear Lake v. Marsh*, 981 S.W.2d 912, 914 (Tex.App.-Houston [1st Dist.] 1998, no pet.) in support of this position. However, this case is distinguishable. *Marsh*, a university employee, sued the university for negligence, following an injury he sustained while fueling a patrol car. The university claimed the exclusive remedy defense; however, it did not present evidence that it had a policy of worker's compensation insurance. Moreover, there was no stipulation, and the court of appeals did not have a record. The university unsuccessfully argued that it was entitled to the exclusive remedy defense because it was self-insured for worker's compensation coverage by statute. The holding in *Marsh* does not support Mosqueda's argument.

 Mosqueda also contends the stipulation is insufficient because the parties did not incorporate language identifying G & H as an "employer" under section 401.011(18) of the Labor Code and appel-

lant as a covered "employee" under section 408.001 of the Labor Code. *See* Tex. Lab. Code Ann. §§ 408.001, 408.011(18) (Vernon Supp.2003). Mosqueda's semantical argument is not sustainable. *See Rodriguez v. Martin Landscape Management, Inc.*, 882 S.W.2d 602, 605 (Tex.App.-Houston [1st Dist.] 1994, no writ). Practitioners of employer relations and worker's compensation law have been using the word "subscriber" as a short-hand rendition of "has a policy of worker's compensation insurance" for many years. Moreover, in some instances, the definitions of "employer" and "employee" and the exclusive remedy provision may apply to more than one employer of an employee.[6] *Wingfoot*, 111 S.W.3d at 144. Thus, an employee of a temporary employment agency who is injured while working under the direct supervision of a client company is the employee of both and can pursue workers' compensation benefits from either (and be subject to the exclusive remedy provision as to both) if each provided coverage. *Garza v. Exel Logistics, Inc.*, 161 S.W.3d 473, 475 (Tex.2005). *A fortiori*, Mosqueda's arguments regarding statutory definitions for "employees" and "employers" are unavailing. An employer who pleads and proves subscriber status is immune from liability for common-law negligence and the employee's exclusive remedy is under the act. *Puga v. Donna Fruit Co., Inc.*, 634 S.W.2d 677, 680 (Tex.1982). The stipulation removed any factual dispute that G & H had a policy of worker's compensation effective on Mosqueda's date of injury. G & H is entitled to assert the exclusive remedy defense. *See Western Steel Co. v. Altenburg*, 206 S.W.3d 121, 122–23 (Tex.2006). Accordingly, we overrule Mosqueda's sixth issue.

For the foregoing reasons, G & H conclusively proved it is entitled to the JNOV based on its exclusive remedy defense under the Worker's Compensation Act. The trial court correctly granted G & H's motion for JNOV. Accordingly, we affirm the trial court's JNOV.

**F. Did the trial court err in granting the Kash defendants' motion for summary judgment?**

In Mosqueda's seventh issue, she argues that the trial court erred in granting the Kash defendants' motion for summary judgment because the Kash defendants failed to meet their burden to address all claims expressed in Mosqueda's pleadings, and because she raised a genuine issue of material fact.

Edward Kash is the president of G & H, and receives a regular paycheck as an employee of the company. Kash formed Kash Holdings and KFP for estate planning purposes. Kash Holdings and KFP have no employees or operations. KFP owns the land and the building that houses G & H. G & H owns all of the equipment and leases the building from KFP.

*Failure to Address All Claims*

In an attempt to assign liability to the Kash defendants jointly and severally, Mosqueda included the following claims in her pleadings: negligent activity, products liability, gross negligence, breach of contract, single business enterprise, and alter ego against the Kash defendants. In their traditional motion for summary judgment, which the trial court granted, the Kash defendants addressed joint enterprise, alter ego, and single business enterprise.

---

**6.** An employer, unless otherwise specified, is a person who makes a contract of hire, employs one or more employees, and has workers' compensation insurance coverage. Tex. Lab.Code Ann. § 401.011(18) (Vernon Supp. 2004–2005). An employee is any person in the service of another under a contract of hire, whether express or implied, or oral or written. *Id.* § 401.012(a).

Mosqueda contends the negligence, products liability, gross negligence, and breach-of-contract issues must be remanded to the trial court because the Kash defendants did not address those theories in their motion.

A party's omission of one or more of her claims from a motion for summary judgment does not constitute waiver because a party is entitled to move for partial summary judgment. *McNally v. Guevara*, 52 S.W.3d 195, 195 (Tex.2001). If the trial court does not dispose of all issues in an interlocutory summary judgment, the undisposed issues remain to be tried to a factfinder. *See Chase Manhattan Bank, N.A. v. Lindsay*, 787 S.W.2d 51, 53 (Tex.1990). Therefore, any claims on which summary judgment was not granted and for which all grounds were not conclusively established at trial must be submitted to the jury to avoid waiver. Tex.R. Civ. P. 279; *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex.1991). Mosqueda did not request that the trial court submit issues to the jury on negligence, gross negligence, products liability, or breach of contract with regard to the Kash defendants, nor did Mosqueda object to the omission of such issues. Mosqueda does not contend that those claims were conclusively established. Therefore, Mosqueda waived any recovery from the Kash defendants based on negligence, gross negligence, products liability, or breach of contract. Tex.R. Civ. P. 279 ("Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived.").

### Equitable Doctrines

The only remaining issues to be considered with regard to the Kash defendants' motion for summary judgment are joint enterprise, single business enterprise, and alter ego. The equitable doctrines asserted by Mosqueda are distinct equitable theories, but have similar purposes. The alter ego doctrine is applied to disregard the corporate fiction when there is such unity between a corporation and its subsidiary that the separateness of the latter has ceased and holding only the subsidiary liable would lead to injustice. *North American Van Lines v. Emmons*, 50 S.W.3d 103, 119 (Tex.App.-Beaumont 2001, pet. denied). Under the single business enterprise doctrine, when corporations are not operated as separate entities, each constituent corporation may be liable for the debts incurred in pursuit of that business purpose. *Old Republic Ins. Co. v. Ex–Im Servs. Corp.*, 920 S.W.2d 393, 395–96 (Tex.App.-Houston [1st Dist.] 1996, no writ). Under the joint enterprise theory, courts impute liability to one who was not an active wrongdoer but who is so closely connected to the wrongdoer to warrant the imposition of vicarious liability. *See St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 517, 526 (Tex.2002) (plurality op.); *Shoemaker v. Estate of Whistler*, 513 S.W.2d 10, 13 (Tex.1974). Each of these theories is a method to disregard the corporate fiction and impose liability where none would otherwise exist. *Equinox Enters., Inc. v. Associated Media Inc.*, 730 S.W.2d 872, 877 (Tex.App.-Dallas 1987, no writ).

In this case, G & H is entitled to the exclusive remedy defense. Because Mosqueda was the borrowed employee of G & H, she cannot maintain her common law claims against G & H. Therefore, even if we concluded that the summary judgment should not have been granted, there is no basis for recovery against the Kash defendants. *See Aluminum Chemicals (Bolivia), Inc. v. Bechtel Corp.*, 28 S.W.3d 64, 68 (Tex.App.-Texarkana 2000, no pet.) (stating that, if there is no finding of liability

against subsidiary, plaintiff cannot recover against the parent under single business enterprise, joint enterprise, or alter ego theories). Because there can be no derivative recovery against the Kash defendants, and Mosqueda failed to obtain favorable jury findings directly against the Kash defendants, we overrule Mosqueda's seventh issue.

Having overruled all of Mosqueda's issues, we affirm the trial court's judgment.

SEYMORE, J., concurs.

EDELMAN, J., dissenting.

**CHARLES SEYMORE, Justice, concurring.**

Like other jurists before me, I take "the unusual, but not unprecedented, step of concurring to my own opinion in order to add some further observations." *Thurman v. State*, 861 S.W.2d 96, 101 (Tex. App.-Houston [1st Dist.] 1993, no pet.); *see also Vargas v. State*, 838 S.W.2d 552, 557–58 (Tex.Crim.App.1992) (Benavides, J., concurring to his own majority opinion).

In his dissenting opinion in *Hoffman*, Chief Justice Walker justifiably expressed his frustration with the Supreme Court's failure to "candidly and expressly overrule prior holdings." *See Hoffman v. Trinity Indus., Inc.* 979 S.W.2d 88, 92 n. 4 (Tex. App.-Beaumont 1998, pet. dism'd) (Walker, C.J., dissenting). I note, however that this is a complicated area of the law. In its motion for JNOV, G & H contends Mosqueda failed to adduce evidence that the right of control provisions in the contract between Pacesetter and G & H were a sham. In other words, to avoid the contract, Mosqueda was required to present evidence that the parties ignored the right of control provisions. The requirement of proof that right of control provisions are a sham was first announced in *Newspapers Inc. v. Love*, 380 S.W.2d 582, 590 (Tex. 1964). This case and the authority cited by the Court in support of the rule involved liability for injury to third parties, not an employer's liability for injury to an employee. The statutory and common law relative to an employer's legal duties to an employee has evolved significantly since the 1960's. Considering the non-delegable duties assigned to employers and the fact that worker's compensation insurance is not mandatory in Texas, our courts should proceed with caution in defining the circumstances under which putative employers might be allowed to execute agreements shifting or attempting to circumvent financial responsibility.

**RICHARD H. EDELMAN, Justice, dissenting.**

As the majority opinion correctly recognizes, the JNOV on G & H's exclusive remedy (affirmative) defense can properly be affirmed only if the evidence conclusively established, among other things, that Mosqueda was a borrowed employee of G & H.[1] "Evidence is conclusive only if reasonable people could not differ in their conclusions, *a matter that depends on the facts of each case*." *City of Keller v. Wilson*, 168 S.W.3d 802, 815–16 (Tex.2005) (emphasis added). We review the evidence in the light most favorable to the verdict *and indulge every reasonable inference that would support it. Id.* at 822.

Because neither party in this case assigned error to the definition of "borrowed employee" submitted in the jury charge, the sufficiency of the evidence is measured

---

1. *See Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.*, 793 S.W.2d 660, 666 n. 9 (Tex. 1990).

against that definition.[2] The issue of whether G & H had the right to direct and control the details of the particular work in question was a fact issue to be determined by the jury from the evidence submitted at trial,[3] not a legal question to be decided by this court. The only legal question is whether there was any evidence supporting the jury's finding that G & H did not have that right, such that the JNOV was improper. Therefore, the JNOV cannot be affirmed if the evidence would allow reasonable people to differ on whether G & H had "the right to direct and control the details of the particular work in question."

To establish that it had the requisite right of control for this purpose, G & H's motion for JNOV relied principally on the "Conditions of Service" printed on a Pacesetter time ticket (the "time ticket"), stating that G & H was the "worksite employer with authority to direct the work to be done" (the "right of control provision"). A contract between two employers providing that one shall have the right to control certain employees is a factor to be considered, but is not controlling, in determining whether the employee of one employer had become the borrowed employee of another employer. *Exxon Corp. v. Perez*, 842 S.W.2d 629, 630 (Tex.1992). Although a contractual assignment of the right of control can sometimes be dispositive of whether a regular employee of one party is a borrowed employee of another, *"it is not dispositive when there is conflicting evidence as to which entity had the right to control the details of the work in question."* St. *Joseph Hosp. v. Wolff*, 94

S.W.3d 513, 544 n. 92 (Tex.2002) (plurality opinion) (emphasis added). In such circumstances, the issue is left to the jury. *Id.* In addition, "reviewing courts must construe contracts as a whole; we do not consider only the parts favoring one party and disregard the remainder, as that would render the latter meaningless." *City of Keller*, 168 S.W.3d at 811.

In this case, as in *Garza*, the injured worker was working at the premises of a client company in furtherance of its day-to-day business, and the details of the work that caused the injury were specifically directed by the client company. However, unlike in *Garza*, this case involved a trial rather than a summary judgment, and G & H introduced into evidence and relied upon the time ticket, which also contained the following condition of service:

8. Customer agrees that it will not permit or assign the Services employees to perform any work which would expose them to any unreasonably dangerous working conditions.

("paragraph 8"). The evidence in this case was controverted as to whether G & H had manifested its assent to the conditions of service on the back of the time ticket, and thus failed to conclusively prove that the right of control provision even governed the rights and obligations of the parties.[4] However, even if the conditions of service did apply, providing that G & H had general authority to direct the work to be done, paragraph 8 also applied, supporting at least a reasonable inference, which we must indulge, that G & H had no right to assign Mosqueda to perform any work that

---

**2.** *Romero v. KPH Consolidation Inc.*, 166 S.W.3d 212, 221 (Tex.2005); *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 530 (Tex.2003).

**3.** *See* COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES—GENERAL NEGLIGENCE & INTENTIONAL PERSONAL TORTS PJC 7.2; PJC 7.5 (2003).

**4.** Because the case was not tried on a breach of contract theory, no questions were submitted concerning the existence of a written contract.

could expose her to any unreasonably dangerous working conditions. Because G & H neither objected to, nor requested a limiting instruction for, this evidence, it was admitted for all purposes and could be so considered by the jury.[5]

The evidence further reflects that Pacesetter had sent Mosqueda to G & H to assemble doorknob lock sets. However, Mosqueda's supervisor there, Felix Gonzales, asked her to also work on several other machines, including the multislide machine on which she severed her thumb. Mosqueda's expert witness, Arthur Walton, a professional engineer, testified that: (1) the multislide machine on which Mosqueda was injured did not have a guard over the moving parts, as required by OSHA; (2) without such a guard, there was "an extreme degree of risk of someone getting hurt" by the multislide, particularly in that there was no warning on the machine to alert someone of this danger; and (3) not having a guard on the machine was one of the causes of Mosqueda's accident.

In the context of the jury charge submitted, the foregoing evidence would allow reasonable people to at least differ whether: (1) working on the multislide machine under these circumstances exposed Mosqueda to unreasonably dangerous working conditions; and (2) paragraph 8 provided that G & H did not even have the right to assign, let alone direct and control the details of, any such work, as specified in the charge definition of borrowed employee, even if G & H actually exercised that right. If the jury charge did not correctly state the law, did not correctly apply to the facts of this case, or did not mean what it plainly states, G & H should have requested whatever language was necessary to enable the jury to render a proper verdict.

Lacking any such modification, it negates the role of the jury (and thereby denies the right to a jury trial) for a court, after the fact, to construe the charge as having a more narrow meaning than that of the words used in it, or to ignore evidence that is probative of the issues actually submitted in order to defeat the existence of a fact issue.

Because the charge submitted to the jury and the evidence presented at trial authorized the jury to render a verdict that Mosqueda was not a borrowed employee, G & H was not entitled to a JNOV on that issue. Therefore, I would reverse the JNOV and render judgment in accordance with the jury's verdict.

---

5. *See Tex. Health Enters., Inc. v. Tex. Dep't of Human Servs.*, 949 S.W.2d 313, 314 (Tex. 1997); *Aluminum Co. of Am. v. Alm*, 785 S.W.2d 137, 139 (Tex.1990).